JAMES PETROLEUM CORPORATION, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 91885.   Filed April 26, 1963.

*Watson Washburn,* for the petitioner.
*Michael D. Weinberg,* for the respondent.

168

**OPINION**

BLACK, *Judge:* Petitioner contends that it suffered a loss of $149,600 in 1958, notwithstanding prior deductions for the losses in 1927, 1928, and 1929 due to the worthlessness of its claims against Jackson. Petitioner contends that it is immaterial whether the loss was an embezzlement loss deduction or a bad debt deduction on the notes Jackson gave to petitioner in 1933. Petitioner claims that 1958 is the proper year for the deduction because it was the first year since 1933 in which there were neither any payments received nor any negotiations regarding future payments. Furthermore, petitioner claims that Jackson's advanced age in 1958 made it unlikely that he would raise any additional funds. Therefore, contends petitioner, it was in 1958 that its claim against Jackson became completely worthless.

Respondent contends that petitioner is not entitled to a deduction in 1958 either as a bad debt or as an embezzlement loss. Respondent argues that if the deduction is classified as an embezzlement loss it was worthless in 1930 or at least prior to 1958. As to the notes received in 1933, respondent argues that no independent deduction could be taken for the notes because they were merely in recognition for the underlying embezzlement claims which had already been taken as losses. Alternatively, respondent contends that since the notes were never included in income petitioner is prevented from claiming a loss on these notes as a matter of law.

As a general rule, a taxpayer may not claim a deduction at will in any year he may select but he must take the deduction in the proper year, and any item incorrectly reported can, subject to the statute of limitations, be corrected by the Commissioner. A deduction incorrectly taken in one year will be corrected by eliminating it for the year in which it was taken and allowing it for the year it should have been taken, *Crosley Corporation* v. *United States*, 229 F. 2d 376 (C.A. 6, 1956). Cf. *Kenosha Auto Transport Corporation*, 28 T.C. 421 (1957). Petitioner claims that it incorrectly wrote off the embezzlement loss in 1930[1] and incorrectly took deductions for embezzlement loss in 1927, 1928, and 1929, and that the proper year is 1958. Since the prior years of deduction (1927, 1928, and 1929) are now closed by the statute of limitations it would seem that corrections of prior errors, if any, would have to be made through the operation of sections 1311–1315 of the 1954 Code. Both parties agree, however, that the mitigating sections of the 1954 Code, sections 1311–1315, are not applicable here since it is specifically provided in section 1314(d)[2] that erroneous deductions in years prior to 1932 cannot be corrected by operation of section 1311.[3]

Our Findings of Fact show that, unknown to the stockholders, Jackson used for his personal benefit the following amounts of the stock sales:

| Year | Amount |
|---|---|
| 1927 | $44,291.88 |
| 1928 | 219,751.94 |
| 1929 | 103,265.70 |

---

[1] In 1930, the year petitioner discovered the embezzlement, it obtained deductions for the years 1927, 1928, and 1929, the years in which the embezzlements actually occurred. This was in accordance with the then existing law.

[2] SEC. 1314. AMOUNT AND METHOD OF ADJUSTMENT.

(d) Periods for Which Adjustments May Be Made.—No adjustment shall be made under this part in respect of any taxable year beginning prior to January 1, 1932.

[3] SEC. 1311. CORRECTION OF ERROR.

(a) General Rule.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

Furthermore, these Findings of Fact show that petitioner in its income tax return for 1929 claimed an embezzlement loss of $103,265.70 for that year and that the Commissioner allowed the loss. The Findings of Fact further show that refund claims were filed for 1927 and 1928 based on the embezzlement losses for those years and that these refund claims were allowed.

The question presented here, therefore, requires us to determine whether or not petitioner properly took the deductions in 1927, 1928, and 1929. If the deductions were properly taken in those years petitioner, it seems to us, would not be entitled to the same deduction again in 1958; we know of no law that would permit it.

Petitioner relies on *Scofield's Estate* v. *Commissioner*, 266 F. 2d 154 (C.A. 6, 1959), reversing 25 T.C. 774 (1956), for the proposition that an embezzlement loss should not be taken in the year of discovery where a valuable claim for reimbursement against the embezzler exists. Comparing the *Scofield* case with the instant case, some patent distinctions appear. In the *Scofield* case the loss had not been deducted once and an attempt made to deduct it again in a later year. The suits had been instituted in the year of discovery of the embezzlement, whereas in the instant case suit was not instituted against Jackson until 1932 or against the Concord bank until 1934. Foresight in 1930 as to chances of recovery and not hindsight is the test by which to view the facts. In *Scofield* the embezzlers in the year of discovery had a valuable interest in trust property. In contrast, Jackson's financial condition in 1930, the year the embezzlement was discovered, was very poor. On February 14, 1930, Jackson's creditors filed an involuntary petition in bankruptcy. He was adjudicated a bankrupt on September 8, 1930, and obtained a discharge on January 10, 1935. His liabilities were in excess of assets to the extent of more than $400,000, which amount was determined without consideration of the amount of petitioner's claim. Other documents submitted to petitioner in 1930 indicated insolvency to the extent of $600,000.

This comparison of facts is such that we do not believe the decision in the *Scofield* case would require us to find that petitioner in the instant case improperly took deductions for the embezzlement losses as described in our Findings of Fact in 1927, 1928, and 1929. At the time the embezzlement was discovered in 1930 it was reasonable for petitioner to assume that its loss would not be recovered and that it could properly write it off. Cf. *Earle* v. *Commissioner*, 72 F. 2d 366 (C.A. 2, 1934). The fact that petitioner did collect some money from Jackson over a 25-year period does not, we think, make the deductions taken in 1927, 1928, and 1929 improper. Viewing the situation as it existed in 1930 it was reasonable for petitioner to write off the losses as described in our Findings of Fact. Nor do we believe that the receipt of notes from Jackson in 1933 qualifies petitioner to

take a bad debt deduction in 1958. These notes were merely evidence of the underlying claim against Jackson for the funds embezzled. Petitioner had only one claim against Jackson and that was for reimbursement for its embezzlement losses. In this case the loss had previously been deducted and petitioner, upon receipt of the embezzler's notes, did not enter them in its books as an asset or report the notes as income in the year received.

We hold that petitioner's claim against Jackson was properly deducted in 1927, 1928, and 1929 as an embezzlement loss and that the loss cannot be deducted again in 1958 as a bad debt or as an embezzlement loss under the facts of this case.

*Decision will be entered under Rule 50.*